

## TENNESSE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT CHATTANOOGA

| | | |
|---|---|---|
| **THERESA GOODSON,** | ) | **Docket No.: 2016-01-0270** |
| **Employee,** | ) | |
| **v.** | ) | **State File No.: 68124-2015** |
| | ) | |
| **DOLLAR GENERAL CORPORATION,** | ) | **Judge Audrey A. Headrick** |
| **Self-Insured Employer.** | ) | |
| | ) | |

## EXPEDITED HEARING ORDER

This matter came before the Court on September 26, 2016, on a Request for Expedited Hearing filed by the employee, Theresa Goodson, pursuant to Tennessee Code Annotated section 50-6-239 (2015). The central legal issue is whether Ms. Goodson is likely to prevail at a hearing on the merits that she sustained a compensable back injury. If so, then the question turns to the extent of entitlement to medical and temporary disability benefits. For the reasons set forth below, the Court holds Ms. Goodson is not likely to prevail at a hearing on the merits in proving she sustained a compensable back injury.[1] However, the Court holds that Dollar General is liable for any outstanding medical bills associated with Ms. Goodson's authorized treatment prior to its denial of her claim.

### History of Claim

This case involves an incident on August 25, 2015, when Ms. Goodson, a lead sales associate, fell approximately one to two feet off a ladder and landed on her left side. (Ex. 4.) The parties agreed that Ms. Goodson provided proper, statutory notice of her alleged back injury.

After her fall, an ambulance transported Ms. Goodson to Memorial Hospital. (Ex. 13.) She disclosed to the medical provider her history of chronic back pain and narcotic pain medication usage. *Id.* Ms. Goodson rated her pain level as eight out of ten, and the

---

[1] A complete listing of the technical record and exhibits is attached to this Order as an appendix.

1

medical provider diagnosed her with acute back pain and discharged her that day. *Id.* Her discharge instructions indicated she could return to work without restrictions on August 28. *Id.* The following day, Ms. Goodson returned to Memorial Hospital where medical personnel noted, "drug seeking behavior." *Id.*

Dollar General subsequently instructed Ms. Goodson to go to Sentef Medical Centers for follow-up treatment.[2] (Ex. 1.) Ms. Goodson went to Sentef Medical Centers on August 28, and disclosed her history of chronic back pain and pain management and reported increased back pain with radiculopathy down her left leg following her fall at work. (Ex. 14.) The physician referred her to an orthopedic physician and assigned the following restrictions: no lifting greater than five pounds; no pushing or pulling more than five pounds; no prolonged standing, walking or sitting; and, no climbing, bending, or stooping. *Id.*

After receiving work restrictions, Ms. Goodson testified in her affidavit that she returned to work at Dollar General following her fall. (Ex. 1.) However, Dollar General assigned her to a register with no assistance and scheduled her to work as the manager on duty. *Id.* Ms. Goodson testified both assignments required her to perform tasks beyond her light duty restrictions. *Id.* She further testified she did not return to work for Dollar General because she "felt [she] could not do her job properly." Ms. Goodson acknowledged she has not attempted to find employment elsewhere since she worked for Dollar General. Testimony did not reveal the dates that Ms. Goodson attempted to work following her fall.

Pursuant to the referral by Sentef Medical Centers, Dollar General offered a panel of physicians from which Ms. Goodson selected Dr. Timothy Strait, a neurosurgeon, on September 5, 2015. She saw Dr. Strait on October 20 and reported her fall from a ladder at Dollar General caused "some increased pain in her lower back going down her left leg." (Ex. 6; Ex. 15.) Ms. Goodson disclosed her previous treatment with Dr. Stephen Dreskin for chronic low back pain. *Id.* Dr. Strait noted Ms. Goodson's prior treatment for "chronic lower back syndrome secondary to a Grade I spondylolisthesis at L4-5." *Id.* He reviewed an MRI of the lumbar spine performed on February 24, 2014. *Id.* Upon examining Ms. Goodson and reviewing x-rays and her prior MRI from February 24, 2014, Dr. Strait opined:

> I suspect her recent worsening in terms of her lower back pain as well as the emergence of bilateral leg pain is secondary to worsening of her previous grade I spondylolisthesis at L4-5.
>
> At this point I would favor her undergoing an updated MRI study of the lumbar spine. She will probably require a decompression and stabilization,

---

[2] A Medcor On-Line form documents that Dollar General authorized the initial visit. *Id.*

2

although I would defer any additional recommendations until seeing this updated study.

*Id.* Dr. Strait also placed Ms. Goodson on light duty consisting of no lifting over five pounds and sitting work only. *Id.* Ms. Goodson testified she received a denial letter from Dollar General prior to obtaining the MRI recommended by Dr. Strait. She also received medical bills from providers authorized by Dollar General prior to its denial of her claim.[3] (Ex. 7.)

Regarding Ms. Goodson's pre-existing back condition, the parties admitted medical records into evidence that revealed the following relevant history of her prior back treatment. Ms. Goodson testified she first sought treatment for her back with Dr. John Hammond, who diagnosed her with sciatica on December 23, 2013, based on her complaints of pain that radiated to her left and right thighs and calves. (Ex. 8 at 003, 006.) Dr. Hammond subsequently ordered a lumbar MRI performed on February 24, 2014, which indicated "[g]rade I spondylolisthesis of L4 on L5 secondary to degenerative changes of the facet joints;" "moderate central spinal stenosis;" and, "[b]road-based disc herniation involving the exiting foramina on the left at L4-L5." *Id.* at 021-023. While treating with Dr. Hammond, Ms. Goodson received pain management from Dr. Sung R. Cho from July 8, 2014, through November 26, 2014, including narcotic pain medication and lumbar epidural steroid injections. (Ex. 10.)

Dr. Cho subsequently referred Ms. Goodson to Dr. Stephen Dreskin for continued pain management. (Ex. 12.) She began seeing Dr. Dreskin on January 26, 2015, and continued to see him on a monthly basis prior to and after her August 25, 2015 fall. *Id.* In the six weeks leading up to Ms. Goodson's fall, she rated her pain level as eight out of ten. *Id.* at 116. She requested a referral from Dr. Hammond to see Dr. Hodges, an orthopedic surgeon, and Dr. Hammond referred her on August 3, 2015, to see an orthopedic surgeon to "[e]valuate and treat for chronic back pain."[4] (Ex. 8 at 028-030.) Five days before her fall, Ms. Goodson rated her pain level as nine out of ten. (Ex. 12 at 112.)

Approximately one month after Ms. Goodson saw Dr. Strait, Dollar General sent her to have an independent medical evaluation (IME) performed by Dr. James P. Little on November 17, 2015. (Ex. 16.) He reviewed documents provided to him by Genex Services, a case management provider, including "office notes from pain clinic, Independent Medical Evaluation from neurosurgery, MRI reports of the lumbar spine

---

[3] Diagnostic Imaging Consultants and Sentef Medical Centers bills appear to be for medical treatment authorized by Dollar General prior to its denial of Ms. Goodson's claim. However, the billing statements from UT Erlanger Health Network and Erlanger Health System were not for treatment authorized by Dollar General.

[4] It is unknown whether Ms. Goodson saw Dr. Hodges or any other orthopedic surgeon as a result of Dr. Hammond's referral.

3

(February 24, 2014), ESI procedure note (July 24, 2015), x-rays of the lumbar spine (December 23, 2013 & August 25, 2015) and various administrative paperwork." *Id.* Dr. Little noted Ms. Goodson's pre-injury treatment plan had not changed, her medication regimen had not changed, and no additional spinal procedures were performed since her August 25, 2015 fall. *Id.* In response to whether Ms. Goodson's condition "was caused primarily by the event of August 25, 2015," Dr. Little opined, "based on my current history and physical examination and review of [Ms. Goodson's] medical records, all other causes have contributed more than 50% to the patient's current/ongoing complaints of bilateral radicular lower extremity narcotic dependent pain." *Id.*

On December 1, 2015, Ms. Goodson underwent a CT lumbar spine.[5] (Ex. 12 at 176.) Dr. Dreskin noted on December 17, 2015, that Ms. Goodson, "[s]aw Dr. Strait and had MRI 12/01/15 that showed no changes from previous in 2014. Will increase Gabapentin to 400 mg QID for burning pain." *Id.* at 165. A month later, Dr. Dreskin also increased Ms. Goodson's hydrocodone, at her request, and her Neurotin dosage. *Id.* at 162.

Dollar General subsequently provided Dr. Little with the December 1, 2015 CT study and requested he compare it to her prior February 24, 2014 MRI. (Ex. 16.) On June 9, 2016, Dr. Little opined that, "[f]rom a purely anatomical perspective, there may be an argument for a structural change (increased spondylolisthesis) in the spine itself, but Ms. Goodson's pre-existing low back condition remains unchanged as defined by her clinical presentation as indicated in the November 17, 2015 Independent Medical Evaluation." *Id.* He also reiterated his prior opinion that other causes contributed more than fifty percent to her current condition. *Id.*

Ms. Goodson requested the Court order Dollar General to pay for medical benefits, including the medical treatment previously authorized by Dollar General, and temporary disability benefits. She testified her back is worse since the fall on August 25, 2015. Ms. Goodson also pointed out that Dollar General did not authorize the MRI ordered by Dr. Strait before it denied her claim.

Dollar General argued Ms. Goodson's claim should be denied. It argued causation is not established. Dollar General pointed out Dr. Strait, Ms. Goodson's panel physician, did not address causation. It stated that Dr. Little, Dollar General's IME physician, opined there is no change in Ms. Goodson's pre-existing back condition. Dollar General also stated Dr. Dreskin, Ms. Goodson's personal physician, reviewed Ms. Goodson's MRI and CT scans and found no change, so Dr. Little's opinion is undisputed.

---

[5] The report reflects Jason Lee Kile ordered the CT test. However, it is unknown to the Court with which medical group he practices.

Regarding the issue of temporary disability benefits, Dollar General argued Ms. Goodson did not consult with any doctor regarding her unilateral decision not to return to work on restricted duty. It argued Ms. Goodson made no effort to return to work. Dollar General further argued it is unclear how long Ms. Goodman remained on restricted duty.

Ms. Goodson filed a Petition for Benefit Determination on April 13, 2016, seeking benefits for her alleged back injury. The parties did not resolve the disputed issues through mediation, and the mediator filed a Dispute Certification Notice on May 31, 2016. Ms. Goodson filed a Request for Expedited Hearing, and this Court heard the matter on September 26, 2016. At the hearing, Dollar General moved for a directed verdict, which the Court took under advisement but now denies.[6]

## Findings of Fact and Conclusions of Law

Ms. Goodson bears the burden of proof on all essential elements of her workers' compensation claim. *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). However, she is not required to prove every element of her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). Rather, at an expedited hearing, Ms. Goodson must come forward with sufficient evidence from which this Court might determine that she is likely to prevail at a hearing on the merits. *Id.*

The following general principles govern adjudication of this proceeding. In order for an injury to be compensable, it must be accidental. Under the Tennessee Workers' Compensation Law, an injury is accidental "only if the injury is caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and is identifiable by time and place of occurrence." Tenn. Code Ann. §

---

[6] In *Burchfield v. Renfree,* No. E2012-01582-WA-R3-CV, 2013 Tenn. App. LEXIS 685, at *86-*87 (Tenn. Ct. App. Oct. 18, 2013), the Court of Appeals reiterated the principles regarding directed verdicts:

> The rule for determining a motion for directed verdict requires the trial judge and the appellate courts to look to all of the evidence, take the strongest, legitimate view of the evidence in favor of the opponent of the motion and allow all reasonable inferences from it in his favor. The court must disregard all countervailing evidence and if there is then any dispute as to any material, determinative evidence or any doubt as to the conclusions to be drawn from the whole evidence, the motion must be denied. The court may grant the motion only if, after assessing the evidence according to the foregoing standards, it determines that reasonable minds could not differ as to the conclusions to be drawn from the evidence.

(internal citations omitted). In the present case, the Court finds that reasonable minds can differ as to the conclusions to be drawn from the evidence, so Dollar General's motion for a directed verdict is denied. Additionally, the Court notes that directed verdicts are appropriate in the context of jury trials as opposed to bench trials.

50-6-102(14)(A) (2015). Ms. Goodson must show, to a reasonable degree of medical certainty, that the incident "contributed more than fifty percent (50%) in causing the . . . disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(14)(C) (2015). Likewise, an aggravation of a pre-existing condition is compensable only if "it can be shown to a reasonable degree of medical certainty that the aggravation arose primarily out of and in the course and scope of employment." Tenn. Code Ann. § 50-6-102(14)(A) (2015). Further, as the panel physician, Dr. Strait's opinion regarding causation "shall be presumed correct but this presumption shall be rebuttable by a preponderance of the evidence." Tenn. Code Ann. § 50-6-102(14)(E) (2015).

With these legal principles in mind, the Court first considers whether Ms. Goodson satisfied the necessary requirements to qualify for medical benefits. The Workers' Compensation Appeals Board provided direction regarding the requirements an employee with pre-existing conditions must satisfy in order to qualify for medical benefits at an interlocutory hearing:

> [A]n injured worker who alleges an aggravation of a pre-existing condition must offer evidence that the aggravation arose primarily out of and in the course and scope of employment. *See* Tenn. Code Ann. § 50-6-102(13)(A) (2014). Moreover, the employee must come forward with sufficient evidence from which the trial court can determine that the employee would likely establish, to a reasonable degree of medical certainty, that the work accident contributed more than fifty percent in causing the aggravation, considering all causes. *See* Tenn. Code Ann. § 50-6-102(13)(B)-(C). Finally, an aggravation or exacerbation need not be permanent for an injured worker to qualify for medical treatment reasonably necessitated by the aggravation.

*Miller v. Lowe's Home Centers, Inc.*, No. 2015-05-0158, 2015 TN Wrk. Comp. App. Bd. LEXIS 40, at *18 (Tenn. Workers' Comp. App. Bd. Oct. 21, 2015).[7] (T.R. 6 at Ex. 2.)

Here, it is undisputed that Ms. Goodson had chronic back problems that required monthly pain management. It is also undisputed that her pain level five days prior to the work injury on August 25, 2015, was actually greater than her pain level on the day of the fall. Dr. Strait, her panel physician, opined, "I suspect [Ms. Goodson's] recent worsening in terms of her lower back pain as well as the emergence of bilateral leg pain is secondary to worsening of her previous grade I spondylolisthesis at L4-5." (Ex. 15.) The Court notes that Dr. Strait's opinion indicates he was unaware that Ms. Goodson had experienced bilateral leg pain since at least 2013 or that, five days prior to the fall, she rated her pain level higher than she did on the date of the fall. Further, Dr. Strait did not

---

[7] After the release of *Miller*, the statutory provisions the Appeals Board cited were recodified.

6

opine that any possible worsening of her prior grade I spondylolisthesis at L4-5 was aggravated by Ms. Goodson's fall. Further, Dr. Little, Dollar General's IME physician, opined that other causes contributed more than fifty percent to Ms. Goodson's current condition. (Ex. 16.) After comparing her February 24, 2014 MRI and December 1, 2015 CT scan, Dr. Little opined there was no change to Ms. Goodson's pre-existing low back condition. *Id.*[8]

Ms. Goodson offered no medical proof indicating that the need for medical treatment arose primarily out of and in the course and scope of her employment. Thus, the Court holds Ms. Goodson has not demonstrated she is likely to prevail at a hearing on the merits establishing either an acute injury or an aggravation of her pre-existing back condition due to her fall on August 25, 2015. Although Ms. Goodson has not met the requirements of Tennessee Code Annotated section 50-6-102(14)(A) (2015) to qualify for medical benefits, Dollar General is liable for any outstanding medical bills associated with authorized medical treatment prior to its denial of Ms. Goodson's claim. Based on the Court's holding, the Court will not address the issue regarding temporary disability benefits at this time.

**IT IS, THEREFORE, ORDERED** as follows:

1. Ms. Goodson's request for medical benefits is denied. However, Dollar General is liable for any medical treatment it authorized prior to its denial of Ms. Goodson's claim if any such bills remain outstanding.

2. Ms. Goodson's request for temporary disability benefits is denied.

3. This matter is set for a Status Hearing on December 13, 2016, at 2:00 p.m., Eastern Time.

**ENTERED this the 19th day of October, 2016.**

*Audrey Headrick*

**Judge Audrey A. Headrick**
**Court of Workers' Compensation Claims**

---

[8] Although Dr. Little acknowledged there might be "an argument for a structural change (increased spondylolisthesis) in the spine itself," he opined Ms. Goodson's "pre-existing low back condition remains unchanged as defined by her clinical presentation." *Id.*

<u>Status Hearing</u>:

A Scheduling Hearing has been set on December 13, 2016, at 2:00 p.m. Eastern Time, with **Judge Audrey A. Headrick, Court of Workers' Compensation Claims. You must call 423-634-0164 or toll free at 855-383-0001 to participate in the Initial Hearing.**

**Please Note: <u>You must call in on the scheduled date/time to participate.</u> Failure to call in may result in a determination of the issues without your further participation.**

<u>Right to Appeal</u>:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1.  Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2.  File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3.  Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4.  The appealing party is responsible for payment of a **<u>filing fee in the amount of $75.00.</u>** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **<u>Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.</u>**

5.  The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of

the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

## APPENDIX

Exhibits:

1. Affidavit of Theresa Goodson
2. Separation Notice
3. Affidavit of Brittany Mikel-Norris
4. Employer's First Report of Work Injury or Illness
5. Wage Statement
6. Panel
7. Medical Bills
8. Medical records of Cherokee Health Systems (Dr. John Hammond)
9. Medical records of Chattanooga Imaging
10. Medical records of Dr. Sung R. Cho
11. Medical records of Skyridge Medical Center
12. Medical records of Tennessee Valley Pain Management
13. Medical records of Memorial Hospital
14. Medical records of Sentef Medical Centers
15. Medical records of Dr. Timothy Strait
16. Medical records of Dr. James P. Little

Technical record:[9]

1. Petition for Benefit Determination, filed April 13, 2016
2. Dispute Certification Notice with additional disputed issues and defenses attached, filed May 31, 2016
3. Request for Expedited Hearing, filed July 26, 2016
4. Request for In-Person Hearing and Response to Employee's Request for Expedited Hearing, filed August 1, 2016
5. Order for Expedited Hearing, entered August 17, 2016
6. Notice of Expedited Hearing, filed August 26, 2016
7. Notice of Filing Medical Records, filed September 8, 2016
8. Defendant's Pre-Hearing Brief, filed September 12, 2016
9. Motion for Partial Continuance, filed September 14, 2016
10. Notice of Hearing, filed September 21, 2016
11. Order Denying Motion for Continuance, filed September 22, 2016, and withdrawn on September 23, 2016

---

[9] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 19th day of October, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Theresa Goodson, Employee | X | | | 10300 Arnat Drive<br>Soddy-Daisy, TN 37379 |
| Jennifer S. White, Attorney<br>Ryan T. Malone, Attorney | | | X | jennifer.white@petersonwhite.com<br>ryan.malone@petersonwhite.com |

PENNY SHRUM, COURT CLERK
wc.courtclerk@tn.gov

11